(November 3, 1906.)

J. J. DONOVAN et al., Appellants, v. A. R. MILLER et al., Respondents.

[88 Pac. 82.]

ENJOINING AND RESTRAINING ENFORCEMENT OF JUDGMENT—NEG-LIGENCE, MISTAKE AND UNSKILLFULNESS OF ATTORNEYS—NEGLECT TO PLEAD DEFENSES—PERJURY—DISCOVERY OF—REASONABLE DILIGENCE.

1. A court of equity will not grant an injunction to restrain the enforcement of a judgment at law on the grounds of want of consideration or that the contract sued on is against public policy, where the defendant, through negligence of his attorneys, fails to set up such defenses.

2. Where a defendant fails to interpose all of his defenses in the trial court and judgment goes against him, a court of equity will not restrain enforcement of such judgment on the ground of the failure or negligence of his attorneys to interpose such defenses.

3. Courts will not relieve against a judgment in an independent suit for mere mistakes at law.

4. The erroneous advice of an attorney is not such a mistake as will entitle a party to relief from a judgment.

5. A court of equity will not restrain the enforcement of a judgment at law on the ground of perjury or fraud in obtaining it, unless such fraud is extrinsic or collateral to the question examined and determined in the action.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for Kootenai County. Hon. Ralph T. Morgan, Judge.

Action to restrain the enforcement of a judgment at law. Judgment on demurrer for the defendants. *Affirmed.*

Charles L. Heitman, for Appellants.

It must be conceded, under the allegations of the complaint, taken as confessed by the demurrer, that the judgment which respondent Miller obtained against appellants, the enforcement and collection of which is sought to be permanently enjoined and to be vacated and set aside, was obtained by fraud on the part of respondent Miller.

A judgment is subject to attack by original bill for fraud, even after judgment in the appellate court. (*Kingsbury v. Buckner*, 134 U. S. 650, 33 L. ed. 1047, 10 Sup. Ct. Rep. 638.)

The complaint shows (1) that appellants had a cause of action and lost it; (2) that such loss occurred because they were prevented from presenting their defense, or having it properly considered, either through fraud, accident, or mistake, and other sufficient grounds justifying the interposition of equity; (3) that unless they secure relief in equity, they will be without adequate remedy. (*Little Rock Co. v. Well,* 61 Ark. 354, 54 Am. St. Rep. 216; and note, 33 S. W. 1057, 30 L. R. A. 560.)

In the case at bar appellants were prevented from presenting their defense by the mistake or the negligence of their attorneys. They were prevented from having their defense properly considered by the fraud and perjury on behalf of

respondent Miller.    (*Erie R. R. Co. v. Ramsey,* 45 N. Y. 637;
Story's Equity Jurisprudence, secs. 875, 884.)

Courts of law are not to be used by parties in perfecting,
through the forms of law, the ruin of a party who has em-
ployed a negligent or unworthy attorney.    (*People v. Mayor,*
11 Abb. Pr. 66.)

The attempt of appellants to make their defense proved
unavailing through fraud, accident and mistake, which are
sufficient grounds to induce the action of a court of equity.
(*Burton v. Hynson,* 14 Ark. 32; *Parnell v. Hahn,* 61 Cal. 131;
*Preston v. Ricketts,* 91 Mo. 320, 2 S. W. 793; *St. Louis v.
Schulenberg etc. Co.,* 98 Mo. 613, 12 S. W. 248; *Curtis v.
Cesne,* 1 Ohio, 432; *Winpenny v. Winpenny,* 92 Pa. St. 440;
*Bias v. Vickers,* 27 W. Va. 456; *Hendrickson v. Hinkley,* 17
How. 443, 15 L. ed. 123.)

Edwin McBee, for Respondents.

"Courts of equity will only interfere to enjoin a judgment
at law rendered against a party by reason of fraud or acci-
dent, unmixed with any fault or negligence of himself or his
agents."    (*Phelps v. Peabody,* 7 Cal. 50.)

An injunction will not be sustained to stay proceedings un-
der a judgment obtained by neglect of a party or counsel
where, if the neglect were excusable, full relief might have
been had on motion in the original action.    (*Borland v.
Thornton,* 12 Cal. 440.)

Where a party moves for a new trial and fails, he cannot,
on the same facts, go into equity and enjoin the judgment
rendered.    (*Collins v. Butler,* 14 Cal. 223.)

A judgment cannot be attached on account of material of
which a defendant might have availed himself in the original
action, when there is no proof of fraud or surprise.    (*Weir
v. Vail,* 65 Cal. 466, 4 Pac. 422.)    A judgment at law will be
set aside on the ground of fraud only when the fraud was
practiced in the act of obtaining the judgment, and the party
against whom it was rendered and his counsel are free from

negligence.   (*Zellerbach v. Allenberg,* 67 Cal. 296, 7 Pac. 908; *Ede v. Hazen,* 61 Cal. 360.)

"Perjured testimony procured by bribery on the part of the successful party is not ground for setting aside a decree, although there is a reasonable certainty that the result of a new trial would be different." (*Pico v. Cohn,* 91 Cal. 129, 25 Am. St. Rep. 159, 25 Pac. 971, 27 Pac. 537, 13 L. R. A. 336.)

A judgment will not be vacated for perjury where one of the defendants in an action on a promissory note falsely testified that he signed as surety only. (*McDougal v. Walling,* 21 Wash. 478, 75 Am. St. Rep. 849, 58 Pac. 669.) A judgment will not be set aside on an original bill on the ground that it was founded upon a fraudulent intendment or perjured evidence when there were no hindrances besides the negligence of the defendants in presenting the defense in the first suit. (*Brooks v. O'Haro,* 8 Fed. 529, 2 McCrary, 644.)

"The frauds of which a bill to set aside a judgment or a decree between the same parties, rendered by a court of competent jurisdiction, will be sustained, are those which are intrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit." (*United States v. Throckmorton,* 98 U. S. 61, 25 L. ed. 93.)

An injunction will not be granted against a judgment on account of misconduct of counsel, where the remedy at law by a motion to vacate the judgment would have afforded relief. (*Cowley v. Northern Pac. R. R. Co.,* 46 Fed. 325.) Ignorance or mismanagement of the case by the attorney will not authorize relief by injunction against a judgment at law, (*Winchester v. Grosvenor,* 48 Ill. 517; *Lowe v. Hamilton,* 132 Ind. 406, 31 N. E. 1117; *Mouser v. Harmon,* 96 Ky. 591, 29 S. W. 448.) The mistake of an attorney in pleading will not authorize an injunction against the judgment. (*Green v. Robinson,* 5 How. (Miss.) 80; *Hambrick v. Crawford,* 55 Ga. 335; *Owens v. Ranstead,* 22 Ill. 161; *United States Bank v. Daniel,* 12 Pet. (37 U. S.) 32, 9 L. ed. 989.) The general rule is that parties are not entitled to relief from a judgment

entered against them on account of the negligence of their counsel. (*Jones v. Vane*, 11 Idaho, 353, 83 Pac. 110; *Haight v. Green*, 19 Cal. 118; *Smith v. Tunsted*, 56 Cal. 175; *Quinn v. Wetherbee*, 41 Cal. 247; *Mulholland v. Hindman*, 19 Cal. 605; *Ekel v. Swift*, 47 Cal. 619.) It is well settled that equity will not relieve against a judgment at law on account of any ignorance, unskillfulness or mistake of the party's attorney (unless caused by the opposite party), nor for counsel's negligence or inattention. The fault in such cases is attributed to the party himself. (1 Black on Judgments, sec. 375.)

SULLIVAN, J.—This suit in equity was brought to restrain and enjoin the collection of a certain judgment in the case of *Miller v. Donovan et al.*, 11 Idaho, 545, 83 Pac. 608. Reference is here made to the facts of that case as stated in the opinion, and we shall not repeat them here. It is sufficient to say that this suit was brought to restrain and enjoin the collection of the judgment entered in that case, and is based on the following grounds alleged in the complaint, to wit: 1. That there was a total want of consideration for the contract for the purchase of the sawlogs mentioned in the complaint in the original action, for the reasons that no part of said logs were ever delivered, and that said logs were seized by agents of the United States government under the claim that they were cut in violation of the laws of Congress upon the public domain. 2. That the attorneys of the defendants in that action, who are appellants here, by their negligence and unskillfulness or by reason of their reliance upon certain decisions of courts of last resort, neglected and failed to frame the answer of the appellants to the complaint in that action in such skillful and comprehensive manner as would enable them on the trial of the case to properly present their several defenses, and that such neglect and unskillfulness was committed in opposition to the positive instructions of appellants, and that it would be contrary to good conscience and to justice to make appellants suffer by reason of such neglect and unskillfulness. It is also alleged that the evidence in that case on behalf of this respondent was false,

fraudulent and perjured in certain particulars which are set out in the complaint, and the prayer was that the respondent be restrained and enjoined from collecting that judgment. A general demurrer was interposed to the complaint and sustained by the court. A general demurrer admits the facts properly pleaded. Then the question for decision is: Does the complaint state a cause of action?

Counsel for appellants bases his claim for equitable relief upon three grounds, to wit: 1. Want of consideration for the contract sued on and that it is against public policy; 2. The negligence and unskillfulness of the attorneys for appellant in the original suit; and 3. False testimony given on the trial.

1. As to want of consideration for the contract sued on and its being against public policy: If there was a want of consideration or the contract was against public policy, the defendants certainly knew it at the time they answered in the original suit. It was their duty if they relied upon that as a defense to have plead it in the original action. Want of consideration in a contract will not warrant a court of equity in enjoining the collection of a judgment at law. If the logs in controversy were not delivered to the appellants at the time the original suit was brought, they certainly knew that fact and should have pleaded it in that action. In *Green v. Robinson*, 5 How. (Miss.) 80, it was held that equity would not grant a new trial on the ground that the contract was against public policy, where the defendant, through negligence, failed to make that defense at law.

2. It is contended that the defendants were prevented from making and preparing a full and complete defense by reason of the negligence and unskillfulness of their attorneys, and it is alleged in the complaint of what such negligence and unskillfulness consisted. It is alleged they mistook the law and concluded that they could establish certain defenses without pleading them. We think it is well established that a mistake or unskillfulness of an attorney is not sufficient to authorize an injunction to issue to restrain the enforcement of a judgment at law. In the case at bar it is alleged that the appellants failed to interpose all of their defenses in the

trial court, but that is not cause for an interposition of a court of equity. (*Hambrick v. Crawford,* 55 Ga. 335; *Owens v. Ramstead,* 22 Ill. 161.) It was held in *United States Bank v. Daniel,* 12 Pet. (37 U. S.) 32, 9 L. ed. 989, that courts will not relieve for mere mistakes at law.

It was held by this court in *Jones v. Vane,* 11 Idaho, 353, 82 Pac. 110, that, as a general rule, parties are not entitled to relief from a judgment entered against them on account of the negligence of their counsel. However, that decision was by a divided court upon the point whether the complaint in that action stated a cause of action. In that case the allegations of the complaint showed that the attorney had betrayed his client. In *Lowe v. Hamilton,* 132 Ind. 406, 31 N. E. 1117, it was held that the erroneous advice of an attorney is not such a mistake as will entitle the client to relief from a judgment. In 1 Black on Judgments, section 375, the author states as follows: ''It is well settled that equity will not relieve against a judgment at law on account of any ignorance, unskillfulness or mistake of the party's attorney (unless caused by the opposite party), nor for counsel's negligence or inattention. The fault in such cases is attributed to the party himself. Thus, the neglect of an attorney to plead a proper and valid defense . . . . whereby a judgment is wrongfully obtained against the client, furnishes no ground for relief against the judgment.'' The author in the same section states that there are a few exceptions to the general rule to be discovered in the books and refers to an early case in Tennessee and cases in New York, and concludes his statement as follows: ''With a fine spirit of humanity, but with little regard for the settled principles of law, they declare that they will not suffer a client to be ruined because he has employed an incompetent or unworthy attorney.'' We conclude that the allegations in the complaint of the negligence and unskillfulness of the attorney do not state a cause of action.

As to the third error assigned: It is well settled that a suit in equity may be maintained to enjoin or restrain the enforcement of a judgment that has been obtained by fraud or perjured evidence under certain facts and circumstances. It

is laid down in *Phelps v. Peabody,* 7 Cal. 50, that courts of
equity will only interfere to enjoin a judgment at law ren-
dered against a party by reason of fraud or accident un-
mixed with any fault or negligence of himself or his agents.
(See, also, *Zellerbach v. Allenburg,* 67 Cal. 296, 7 Pac. 908.)
The case of *Pico v. Cohn,* 91 Cal. 129, 25 Am. St. Rep. 159,
27 Pac. 537, 13 L. R. A. 336, is a well-considered case.   To it
is attached an exhaustive note by Mr. Freeman.   In that case
the superior court sustained a general demurrer to the com-
plaint as was done in the case at bar, and gave judgment for
the defendants, from which judgment that appeal was taken.
The facts of that case are clearly stated therein by Chief Jus-
tice Beatty.   It appears that a witness by the name of John-
son had full knowledge of the transaction involved in that
action, and had made certain statements concerning it to the
effect that the transaction between the plaintiff and defend-
ant was a loan and mortgage, and not a sale.   The plaintiff
called him as witness on the first trial of the action, and he
testified that the transaction sued on was an absolute sale
instead of a loan and mortgage, as he had before stated.   It
thereafter appeared that the defendant Cohn had paid the
witness $2,000 to so testify, and it was held by the court on
appeal that it sufficiently appeared from the allegations of
the complaint that upon proof of the facts therein stated
there was reasonable certainty that the plaintiff would, upon
another trial, gain his cause.   The court then asks the ques-
tion: ''Such being the case, is plaintiff entitled to a decree
vacating and annulling the former decree on the ground that
it was procured by fraud?'' and said: ''After a careful and
extended examination of the authorities we are constrained to
answer this question in the negative.   That a former judg-
ment may be set aside for some frauds there can be no ques-
tion, but it must be a 'fraud extrinsic or collateral' to the
questions examined and determined in the action.   And we
think it is settled beyond controversy that a decree will not
be vacated merely because it was obtained by forged docu-
ments or perjured testimony.   The reason of the rule is that
there must be an end of litigation, and when parties have

once submitted a matter or have had an opportunity of submitting it for investigation and determination, and when they have exhausted every means for review or determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from court by a false promise of compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*United States v. Throckmorton*, 98 U. S. 65, 66, 25 L. ed. 96.) In all such instances the unsuccessful party is really prevented by the fraudulent contrivance of his adversary from having a trial; but when he has had a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or pretense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done

once, it could be done again and again *ad infinitum."*  In that case Chief Justice Beatty holds that a former judgment may be set aside for "some frauds," but it must be a fraud "extrinsic or collateral" to the questions examined and determined in the action.  The learned chief justice then asks the question; "What, then, is an extrinsic or collateral fraud within the meaning of this rule?" and refers to instances given in the books such as keeping the unsuccessful party away from court by a false promise of a compromise, or purposely keeping him in ignorance of the suit, or where an attorney fraudulently pretends to represent a party or connives at his defeat, or being regularly employed, corruptly sells out his client's interest.  He does not attempt to state all the frauds "extrinsic or collateral" to the question examined and determined in an action for which a suit in equity may be maintained to restrain the enforcement of a judgment at law, but only mentions some of them.  As we view it, the most important and decisive case upon the question under consideration is that of *United States v. Throckmorton, supra,* in which the opinion was prepared by Mr. Justice Miller.  That was a bill in chancery in the circuit court of the United States for the District of Columbia for the purpose of setting aside a decree of confirmation of a Mexican grant.  The fraud alleged in the bill was that Richardson, in whose favor the decree of confirmation was had, during the pendency of the proceedings for confirmation, obtained from the governor of California his signature to the grant, and falsely antedated it so as to impose on the court the belief that it was made while that governor had the power to make it, and in support of said false document Richardson procured and filed therewith the depositions of perjured witnesses.  A demurrer to the bill was sustained and judgment was thereupon entered dismissing it.  Said circuit court, in rendering its decision, held that the frauds alleged in that bill were not such "extrinsic and collateral" acts as would justify the interference of equity with the decree of confirmation, and the court mentions some of such extrinsic and collateral acts for which a suit in equity may be maintained, to wit, keeping

the adversary's witnesses away; secreting or purloining his testimony; or, if the citation to him be given under such circumstances as to defeat its purpose, and the court says: "Any conduct of the kind mentioned would tend to prevent a fair trial on the merits and thus to deprive the party of his rights, so if the judge sit when disqualified from interest, or consanguinity; if the litigation be collusive; if the parties be fictitious, or if the real party affected be falsely stated to be before the court, the judgment recovered may be set aside or its enforcement restrained." Mr. Justice Miller, after stating the facts, learnedly discusses the question under consideration, and reviews and comments upon many cases touching upon that question, and holds that mistakes in law or facts, or newly discovered evidence since the trial, may all be presented in the same suit and relief given therein, and if there are any mistakes in those matters made by the trial court, the erroneous decision may be corrected on appeal or by writ of error. Thus indicating that every error which under the law may be corrected in the same proceeding must be corrected there. The learned justice states that there is an admitted exception to the general rule. "In cases where, by reason of something done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case; where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as keeping him away from court or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party or connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these and similar cases which show that there has never been any real contest in the trial or hearing of the case are reasons for which a motion for new suit may be sustained, to set aside and annul the former judgment or decree and open the case for a new and a fair hearing"; and cites a number of authorities in support of that rule. In the cases cited by the learned justice and many others relief has been

granted on the ground that by some fraud practiced directly upon the party seeking relief against a judgment or decree, that the party has been prevented from presenting all of his case to the court, it is then said: "On the other hand, the doctrine is well settled that the court will not set aside a judgment because it was founded upon fraudulent instruments or perjured evidence or for any matter which was actually presented and considered in the judgment assailed." The learned justice cites the case of *Greene v. Greene*, 2 Gray, 361, 61 Am. Dec. 454, and states that the best discussion of the whole subject is found in that case. That was a bill filed by a wife against her husband for a divorce, and in her bill she alleged that the former decree was obtained by fraud and collusion and false testimony. The court was of the opinion that those allegations meant that the husband collided or combined with other persons than the complainant to obtain false testimony, or to otherwise aid him in fraudulently obtaining his decree. Chief Justice Shaw said there that the "court thinks the point was settled against the complainant by authority; not specifically in regard to divorce, but generally as to the conclusiveness of judgments and decrees between the same parties." He then examines the authorities, English and American, and adds: "The maxim that fraud vitiates every proceeding must be taken like other general maxims, to apply to cases where proof of fraud is admissible, and where the same matter has been actually tried or so in issue that it might have been tried, it is not made admissible. The party is estopped to set up such fraud because the judgment is the highest evidence and cannot be contradicted." It is otherwise with a stranger to the judgment. After reviewing many authorities, Mr. Justice Miller concludes: "We think these decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. That the mischief

of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterward ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In the case of *Pico v. Cohn, supra,* the defendant paid the witness Johnson $2,000 for testifying falsely in that case, and the court held that that was not a fraud "extrinsic or collateral" to the question tried. In the case of *United States v. Throckmorton, supra,* Richardson procured from the governor his signature to a grant and falsely antedated it so as to impose on the court the belief that it was made at a time when the governor had the power to make it, and the supreme court of the United States held that that was not a fraud "extrinsic or collateral" to the matter tried by the court. The correct rule as laid down in the case of *United States v. Throckmorton, supra,* is that the cases in which the relief prayed for in that action had been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from fully exhibiting and trying his case, by reason of which there never had been a real contest before the court of the subject matter of the suit. As to the grounds of relief against a judgment obtained by fraud, Freeman, in his work on Judgments, fourth edition, section 489 says: "It must be borne in mind that it was not fraud in the cause of action, but fraud in the management which entitles a party to relief. The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action is vitiated by fraud, that is the defense which must be interposed, and unless interposition is prevented by fraud, it cannot be asserted against the judgment, for judgments are impeachable for those frauds only which are extrinsic to the merits of the case and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to merits between the parties. All

mistakes and errors must be corrected from within by motion for a new trial or to reopen the judgment or by appeal.''

Mr. Freeman reviews many cases in the note to *Pico v. Cohn, supra.* While he does not agree with some of the authorities in regard to what frauds are ''extrinsic or collateral,'' he concludes that the supreme court of the United States, in *United States v. Throckmorton, supra,* stated the true ground upon which its action in that case was supportable. It is clear to us, from the decided preponderance of the adjudicated cases upon the question under consideration that the allegations in the complaint in the action at bar in regard to false, fraudulent and perjured testimony and the negligence and unskillfulness of appellants' attorney, do not state a cause of action, and aside from that we think it sufficiently appears that such evidence could have been met on the trial of the case if the defendants had exercised reasonable diligence in procuring it. We therefore conclude that the complaint does not state a cause of action, and that the court did not err in sustaining demurrer thereto. Costs of appeal are awarded to the respondents.

Stockslager, C. J., and Ailshie, J., concur.